IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MALCOLM HERRING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:07-cv-823-MEF |
| ) | |
| STATE FARM MUTUAL ) | |
| AUTOMOBILE INSURANCE ) | |
| COMPANY, d/b/a STATE FARM ) | |
| INSURANCE COMPANIES, ) | |
| ) | |
| Defendant. ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION TO DISMISS BREACH OF CONTRACT AND BAD FAITH CLAIMS

COMES NOW Plaintiff Malcolm Herring, (hereinafter referred to as "Plaintiff" or "Herring") and respectfully submits the following as grounds to deny Defendant State Farm Mutual Automobile Insurance Company's ("Defendant" or "State Farm") Motion to Dismiss Plaintiff's Breach of Contract and Bad Faith Claims.

### FACTUAL BACKGROUND

1.      On August 2, 2005 in Montgomery County, Alabama, Plaintiff was the driver of a 1995 Chevrolet Suburban traveling South on Perry Hill Road when David Hooks (hereinafter "Hooks" or "tortfeasor"), a non-party to this action, negligently and/or wantonly operated his vehicle so as to cause it to collide with a vehicle being driven by Nancy Beeman, thereby causing Beeman's vehicle to collide with Plaintiff's vehicle. (See Plaintiff's Complaint, ¶¶ 5 and 6).

2. As a result of the tortfeasor's negligence and/or wantonness, Plaintiff sustained severe injuries to his back, neck and shoulder; a rotator cuff injury; medical expenses and physician's fees; rehabilitation treatment for those injuries; pain and suffering and other consequential damages. (Plaintiff's Complaint, ¶ 9).

3. The tortfeasor's fault and liability for Plaintiff's injuries was determined, clear and obvious. Plaintiff was determined to be without fault. (Plaintiff's Complaint, ¶ 10).

4. The tortfeasor was insured by GMAC and had a small policy of liability insurance with a policy limit of $20,000. (Plaintiff's Complaint, ¶ 11).

5. Plaintiff timely provided Defendant with all medical records and documentation related to the collision and Plaintiff's damages (Plaintiff's Complaint, ¶ 17).

6. In February 2007, Plaintiff notified Defendant that the tortfeasor's insurance carrier wished to settle with Plaintiff for $20,000, the limits of the tortfeasor's policy. Plaintiff further notified Defendant that because the tortfeasor was underinsured with policy limits that did not fully compensate Plaintiff for his injuries, Plaintiff claimed coverage under his uninsured/underinsured (UIM) coverage with Defendant. (Plaintiff's Complaint, ¶ 15).

7. At the time of the accident, Plaintiff was insured by two automobile insurance policies issued by Defendant State Farm. Each policy carried UIM coverage in the amount of $20,000; thus because his policies could be stacked, Plaintiff had a total of $40,000 UIM coverage available to him under said policies. (Plaintiff's Complaint, ¶¶ 28-29).

8. On or about April 10, 2007, Defendant approved settlement of Plaintiff's claim against the tortfeasor and waived its subrogation rights. (Plaintiff's Complaint, ¶ 18).

9. With all of Plaintiff's medical records and information related to the accident and Plaintiff's damages at its disposal and having notice of Plaintiff's UIM claim, Defendant notified Plaintiff that it would not make any payments to Plaintiff pursuant to the UIM coverage contained in his policies with Defendant. (Plaintiff's Complaint, ¶ 25).

## STANDARD OF REVIEW

As an initial matter, it is clear in this Circuit that a "motion to dismiss will be denied unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief." *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). The allegations in the complaint must be taken as true for purposes of the motion to dismiss, *id.* at 1463, and they must be viewed in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Additionally, this Court has recognized that the threshold that a complaint must meet to survive a motion to dismiss for failure to state a claim is "exceedingly low." *Adair v. Troy State Univ. of Montgomery*, 892 F. Supp. 1401 (M.D. Ala. 1995) (Albritton, J.) (citing *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)). Defendant State Farm cannot make such a showing in the present case.

**ARGUMENT**

Defendant's motion is based on its assertion that Plaintiff's breach of contract and bad faith claims are premature and therefore not ripe for adjudication. In order to assert claims for breach of contract and bad faith, Plaintiff must first establish that he is legally entitled to recover damages from the non-party tortfeasor. *See LeFevre v. Westberry,* 590 So. 2d 154 (Ala. 1991). The phrase "legally entitled to recover as damages" has been interpreted to mean that "the insured must be able to establish fault on the part of the uninsured motorist, which gives rise to damages and must be able to prove the extent of those damages." *See id. at 157(citing Quick v. State Farm Mut. Auto. Ins. Co.,* 429 So. 2d 1033 (Ala. 1983)).

There is no universally definitive answer to the question when an action alleging bad faith may be maintained for the improper handling of an uninsured or underinsured motorist claim. *LeFevre*, 590 So. 2d at 159. Further, a plaintiff does not have to sue and receive a judgment in his or her favor before bringing an action alleging bad faith. *Id.* at 160 (*citing State Farm Mut. Auto. Ins. Co. v. Griffin,* 51 Ala. App. 426, 431, 286 So. 2d 302 (1973)). The answer is dependent upon the facts of each case. *Id*. at 159.

Upon an offer of settlement being made by the tortfeasor's liability carrier, there are steps a plaintiff must take so as to preserve his or her claim against the underinsured motorist carrier. As provided in *Lambert v. State Farm Mut. Ins. Co.*, 576 So. 2d 160 (Ala. 1991), the Supreme Court of Alabama set out a six step procedure for a plaintiff to settle with a tortfeasor, while at the same time protecting the subrogation interest of the underinsured motorist carrier. This six step process is as follows:

"1. The insured should give notice to the underinsured motorist insurance carrier of the claim under the policy for underinsurance benefits. As soon as it appears that the insured's damages may exceed the tortfeasor's limits of liability coverage.

2. If the tortfeasor's liability insurance carrier and the insured entered into negotiations that ultimately lead to a proposed compromise or settlement of the insured's claim against the tortfeasor, and if the settlement would release the tortfeasor from all liability, then the insured, before agreeing to the settlement, should immediately notify the underinsured motorist carrier of the proposed settlement and the terms of any proposed release.

3. At the time the insured informs the underinsured motorist carrier of the tortfeasor's intent to settle, the insured should also inform the carrier as to whether the insured will seek underinsured motorist benefits, in addition to the benefits payable under the settlement proposal so that the carrier can determine whether it will refuse to consent to the settlement, will waive its right of subrogation against the tortfeasor, or will deny any obligation to pay underinsured motorist benefits.  If the insured gives the underinsured motorist carrier notice of the claim for underinsured motorist benefits as may be provided in the policy, the carrier should immediately begin investigating the claim, should conclude such an investigation within a reasonable time, and should notify its insured of the action it proposes with regard to the claim for underinsured motorist benefits.

4. The insured should not settle with the torfeasor without first allowing the underinsured motorist carrier a reasonable time in which to investigate the insured's claim and to notify its insured of its proposed action.

5. If the uninsured motorist carrier refused to consent to a settlement by its insured with the tortfeasor, or if the carrier denies the claim of its insured without a good faith investigation on the merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier would, by any of those actions, waive any right of subrogation interest against the tortfeasor or the tortfeasor's insurer.

6. If the underinsured motorist carrier wants to protect its subrogation rights, it must within a reasonable time, and, in any event before the tortfeasor is released by the carrier's insured, advance to its insured an amount equal to the tortfeasor's settlement offer.

5

*Lambert*, 576 So. 2d at 167-68.

Additionally, the court in *LeFevre* outlined the general rules which govern an insurer's handling of an uninsured motorist claim by its insured as follows:

> "1. When a claim is filed by its insured, the uninsured motorist carrier has an obligation to diligently investigate the facts, fairly evaluate the claim, and act promptly and reasonably.
>
> 2. The uninsured motorist carrier should conclude its investigation within a reasonable time and should notify its insured of the action it proposes with regard to the claim for uninsured motorist benefits.
>
> 3. Mere delay does not constitute vexatious or unreasonable delay in the investigation of a claim if there is a bona fide dispute on the issue of liability.
>
> 4. Likewise, mere delay in payment does not rise to the level of bad faith if there is a bona fide dispute on the issue of damages.
>
> 5. If the uninsured motorist carrier refuses to settle with its insured, its refusal to settle must be reasonable."

*LeFevre,* 590 So. 2d at 161.

Plaintiff clearly followed the *Lambert* steps so as to preserve his underinsured motorist claim with Defendant. Prior to his settlement with the tortfeasor, Plaintiff timely provided Defendant with copies of all medical records and documents pertaining to Plaintiff's claims. Plaintiff further notified Defendant that because the tortfeasor's policy limits did not fully compensate Plaintiff for his damages, Plaintiff would be making a claim for underinsured benefits. Unlike the insurers in *Quick* and *State Farm Mut. Auto. Ins. Co. v. Smith* who questioned the amount damages to which the insured was entitled to recover, Defendant did not question the severity of Plaintiff's losses or otherwise dispute the amount of Plaintiff's damages. 429 So. 2d 1033, 1035; 956 So. 2d 1164, 1169. Neither did Defendant assert that it had denied Plaintiff's claims because they had

6

not yet ripened. Therefore, upon the settlement of Plaintiff's underlying claims, which Defendant ultimately approved, liability was established and Plaintiff's damages fixed. *See Pontius v. State Farm Mut. Auto. Ins. Co.*, 915 So. 2d 557, 564 (Ala. 2005). As such, there can be no question that Plaintiff has established that he is legally entitled to recover damages from the tortfeasor. Further, Alabama courts have found that punitive damages claims are items that an insured are legally entitled to recover from a tortfeasor and therefore, are within uninsured/underinsured coverage. *See Omni Ins. Co. v. Foreman*, 802 So.2d 195 (Ala. 2001) and *Hill v. Campbell*, 804 So.2d 1107 (Ala.Civ.App.2001).

As further support for its motion, Defendant relies on *Pontius v. State Farm Mut. Auto. Ins. Co.*, 915 So.2d 557 (Ala. 2005). However, Defendant's reliance on *Pontius* is misplaced as the facts in that case are clearly distinguishable from those here. For example, at the time that State Farm filed its motion to dismiss in *Pontius*, there was a dispute between the Plaintiff and tortfeasor with respect to liability. Here, there is no question as to liability. Additionally, the *Pontius* Plaintiff asserted breach of contract and bad faith refusal to pay claims <u>before</u> resolving her claims against the tortfeasor. *Id*. at 560, 564. In this case, it is clear that Plaintiff's breach of contract and bad faith claims arose <u>after</u> Defendant's approval of the settlement, thereby further delineating the point that the tortfeasor's liability was established and Plaintiff's damages fixed. *Id*. at 564. Plaintiff has clearly fulfilled his obligation of satisfying all of the contractual conditions precedent before bringing his breach of contract and bad faith claims in this lawsuit. *See Nationwide Insurance Company v. Nilsen,* 745 So. 2d 264 (Ala. 1998).

WHEREFORE, Plaintiff requests that this Court deny Defendant's Motion to Dismiss.

        Respectfully submitted,

        /s/ Maricia Woodham
        Maricia Woodham (BEN050)
        Attorney for Plaintiff Malcolm Herring

**OF COUNSEL**:

SABEL & SABEL, P.C.
2800 Zelda Road, Suite 100-5
Hillwood Office Center
Montgomery, Alabama 36106
334/271-2770 (Telephone)
334/277-2882 (Facsimile)
mwoodham@sabellaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been filed via the Court's electronic filing system this the 5th day of October, 2007, which will send notice of same to all counsel of record.

Michael B. Beers, Esq.
Constance T. Buckalew, Esq.
Angela Taylor Baker, Esq.
BEERS, ANDERSON, JACKSON,
  PATTY & FAWAL, P.C.
Post Office Box 1988
Montgomery, Alabama 36102-1988

        /s/ Maricia Woodham
        OF COUNSEL